UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

---

MEHRDAD FOTOOHIGHIAM
*Plaintiff*,

v.

Case No: 24-cv-04182
Hon. Judge M. Douglas Harpool

JURY TRIAL DEMANDED

BOONE COUNTY, MISSOURI by and through
Its Board of County Commissioners,
and,

PROSECUTOR ROGER JOHNSON,
PROSECUTOR PHILLIP GROENWEGHE,
BOONE COUNTY SHERIFF DWAYNE CAREY,
CAPTAIN JENNIFER ATWELL,
OFFICER MATT VESSAR,
OFFICER DAVID WILSON,
OFFICER ANTHONY PERKINS,
JOHN DOE 1-30,
JANE DOE 1-30,
in their individual and official capacities,
and,

INMATE CALLING SOLUTIONS, LLC,
a Domestic Limited Liability Company,
SECURUS TECHNOLOGIES, LLC,
a Foreign Limited Liability Company,
CENTURYLINK PUBLIC COMMUNICATIONS, LLC,
a Foreign Limited Liability Company,
and,

HEDIEH ZAERIN and/or HEDIEH FOTOOHIGHIAM,
ALI RASTKAR,
IAN RICH,
JUSTIN TODD,
in their individual capacities,

*Defendants.*

---

## SECOND AMENDED COMPLAINT

NOW COMES, Plaintiff Mehrdad Fotoohighiam, by and through his counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Sean W. Pickett and Associates LLC by Sean W. Pickett, local counsel, and for his Second Amended Complaint ("Amended Complaint") against Defendants on information and belief alleges the following:

## INTRODUCTION:

1. This is a civil rights action seeking monetary damages from Defendants for the violation of various civil rights, resulting in injuries and damages to Plaintiff in the City of Columbia, County of Boone, Missouri.
2. Plaintiff Mehrdad Fotoohighiam spent nearly 6 years wrongfully imprisoned for the alleged conspiracy to commit murder of his ex-wife co-defendant Hedieh Fotoohighiam and a circuit court judge while incarcerated in the Boone County Jail for a conspiracy he did not plan, commit, or execute.
3. Plaintiff was a wealthy and successful businessman when Defendants kept Plaintiff detained, arrested, and wrongfully incarcerated him for a conspiracy to commit murder, assault, and tampering he did not commit or facilitate.
4. After years of abuse and deprivation of Mr. Fotoohighiam's civil rights, freedoms, liberty, and property; and after Defendants incarcerated Plaintiff for an arson he did not commit and was acquitted of, Defendants' continued to detain Plaintiff for an alleged conspiracy to commit murder in which Mr. Fotoohighiam was fully acquitted of the charges in a bench trial in 2022.

5. Defendants' abuse and deprivation of Plaintiff's civil rights continued through the illegal recordings of Plaintiff's conversations with his counsels while incarcerated in the Boone County Jail, a clear violation of his constitutional right to counsel.
6. Defendants repeatedly manufactured claims against Plaintiff through false and fabricated testimony of unreliable and incentivized eyewitnesses and criminals; and through a blatantly biased and inadequate police investigation designed to keep Mr. Fotoohighiam incarcerated.
7. Upon information and belief, Daniel K. Knight, the Prosecuting Attorney of the County of Boone, State of Missouri in 2017, died by suicide in 2022 according to an investigation by the Columbia Police Department.
8. Defendants' case against Mr. Fotoohighiam relied on manufactured statements made by inmates to the Boone County Sheriff's department and prosecutors. However, it was revealed that these statements were fabricated by the Defendants in order to keep Mr. Fotoohighiam detained and deprived of his liberty.
9. These false statements were made by incentivized inmates and were allegedly verified by Detective Matt Vessar of the Boone County Sheriffs department.
10. Despite there being no evidence to support their prosecution, upon information and belief, prosecutors offered Mr. Fotoohighiam misdemeanor pleas on the conspiracy to commit murder cases.
11. Mr. Fotoohighiam refused the misdemeanor pleas for crimes he never committed. Prosecutors unjustly proceeded against Mr. Fotoohighiam in a bench trial.

12. On April 7, 2022, Mr. Fotoohighiam was found not guilty as to all charges in *State v. Fotoohighiam*, Case No. 22BA-CR00943.

13. Through the actions of Defendants, Plaintiff was incarcerated since 2016 for crimes he never committed.

14. Plaintiff was deprived of nearly 6 years of his life, along with all of his assets, reputation, and career for crimes he never committed; and were manufactured by Defendants. He now sues Defendants for their unconstitutional misconduct that caused his wrongful arrest and imprisonment, that violated his constitutional rights, and which inflicted substantial and irreversible harm.

## JURISDICTION AND VENUE

15. This action is brought pursuant to 42, U.S.C. §§1983, 1985, 1986, 1988, and state law to remedy the deprivation under the color of law of Fotoohighiam's rights guaranteed by the United States Constitution, as well as 18 U.S.C. §2510 *et seq.* This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16. This Court has supplemental jurisdiction over Fotoohighiam's state law claims pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the Western District of Missouri pursuant to 28 U.S.C. §1391(b) and (c) because this is the district where most of Defendants reside and where the events giving rise to the claims herein arose.

## JURY DEMAND

18. Fotoohighiam demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the U.S. Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

*{Plaintiff}*

19. Plaintiff Mehrdad Fotoohighiam was at all times relevant a resident of the State of Missouri at all times relevant to this Complaint. Originally, Plaintiff was originally wrongfully incarcerated for the alleged arson of Marcia Greens living structure. In 2017, Plaintiff was wrongfully charged and remained incarcerated for the alleged conspiracy to commit murder, assault, and tampering with witnesses (tampering was brought on or about 2021). In August 2019, Plaintiff was acquitted on all charges relating to the alleged arson of Marcia Green's property. On April 7, 2022, Plaintiff was fully exonerated of all the charges relating to the conspiracy to commit murder, assault, and witness tampering case in a bench trial.

*{Defendants}*

20. Defendant **BOONE COUNTY MISSOURI, BY AND THROUGH ITS BOARD OF COUNTY COMMISSIONERS**, at all times relevant to this Complaint, upon information and belief, employed the officers acting under color of law and within the scope of its employment of the officers pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Boone County Missouri, Boone County Sheriff's Department, and the State of Missouri.

21. Defendant **ROGER JOHNSON**, at all times relevant to this complaint, upon information and belief, was the Assistant Prosecuting Attorney in Boone County and is the current Prosecuting Attorney for the Boone County Prosecutor's Office, acting under color of law and within the scope of its authority pursuant to the statutes, ordinances, regulations, policies, customs, and usage in the City of Columbia, County of Boone, and State of Missouri.

22. Defendant **PHILLIP GROENWEGHE**, at all times relevant to this complaint, upon information and belief was acting as the Special Prosecuting Attorney for the conspiracy to commit murder case as well as the previous arson case against Plaintiff, acting under color of law and within the scope of its authority pursuant to the statutes, ordinances, regulations, policies, customs, and usage in the City of Columbia, County of Boone, and State of Missouri.

23. Defendant **BOONE COUNTY SHERIFF DWAYNE CAREY**, at all times relevant to this Complaint, upon information and belief, was the Boone County Sheriff at the time of these allegations, acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Columbia, Missouri, Boone County Sheriff's Department, and the State of Missouri. He is sued in both his individual and official capacity.

24. Defendant **CAPTAIN JENNIFER ATWELL**, at all times relevant to this Complaint, upon information and belief, was an officer of the Boone County Sheriff's Department acting under color of law and within the scope of her employment pursuant to the statutes, ordinances, regulations, policies, customs,

and usage of the City of Columbia, Missouri, Boone County Sheriff's Department, and the State of Missouri. She is sued in both her individual and official capacity. Upon information and belief, Atwell oversaw certain sections of the Boone County Jail and was involved in various aspects of Plaintiff's custody in the Boone County Jail.

25. Defendant **OFFICER MATT VESSAR**, at all times relevant to this Complaint, was an officer of the Boone County Sheriff's Department acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Columbia, Missouri, Boone County Sheriff's Department, and the State of Missouri. He is sued in both his individual and official capacity. Upon information and belief, Vessar conducted investigations as part of Plaintiff's alleged conspiracy to commit murder case at the time of this investigation.

26. Defendant **OFFICER DAVID WILSON**, at all times relevant to this Complaint, was an officer of the Boone County Sheriff's Department acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Columbia, Missouri, Boone County Sheriff's Department, and the State of Missouri. He is sued in both his individual and official capacity. Upon information and belief, Wilson conducted investigations as part of Plaintiff's alleged conspiracy to commit murder case at the time of this investigation

27. Defendant **OFFICER ANTHONY PERKINS**, at all times relevant to this Complaint, was an officer of the Boone County Sheriff's Department acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Columbia, Missouri, Boone County Sheriff's Department, and the State of Missouri. He is sued in both his individual and official capacity. Upon information and belief, Perkins conducted investigations as part of the investigations in Plaintiff's alleged "conspiracy to commit murder" case.

28. Defendants **JOHN DOE 1-30,** upon information and belief at all times relevant to this Complaint were employees, officers, or other individuals who participated in the actions giving rise to this cause of action.

29. Defendants **JANE DOE 1-30**, upon information and belief at all times relevant to this Complaint were employees, officers, or other individuals who participated in the actions giving rise to this cause of action.

30. Defendant **INMATE CALLING SOLUTIONS, LLC**, a domestic limited liability company, at all times relevant to this Complaint, upon information and belief was one of the companies that recorded and/or facilitated phone calls and/or video calls at the Boone County Jail during Plaintiff's stay in the Boone County Jail.

31. Defendant **SECURUS TECHNOLOGIES LLC**, a foreign limited liability company, at all times relevant to this Complaint, upon information and belief was one of the companies that recorded and/or facilitated phone calls and/or video calls at the Boone County Jail during Plaintiff's stay in the Boone County Jail.

32. Defendant **CENTURYLINK PUBLIC COMMUNICATIONS, INC. ("CPCI")**, a foreign corporation, at all times relevant to this Complaint, upon information and belief was one of the companies that recorded and/or facilitated phone calls and/or video calls at the Boone County Jail during Plaintiff's stay in the Boone County Jail.

33. Defendant **HEDIEH ZAERIN and/or HEDIEH FOTOOHIGHIAM** upon information and belief at all times relevant to this Complaint, upon information and belief, was an individual residing upon information and belief in the City of Columbia, and State of Missouri. She is sued in her individual capacity.

34. Upon information and belief, Defendant **ALI RASTKAR**, at all times relevant to this Complaint, upon information and belief was an individual residing in the City of Columbia, Missouri, and the State of Missouri. He is sued in his individual capacity.

35. Defendant **IAN RICH**, at all times relevant to this Complaint, upon information and belief was an individual residing in the City of Columbia, Missouri, and the State of Missouri. He is sued in his individual capacity.

36. Defendant **JUSTIN TODD**, at all times relevant to this Complaint, upon information and belief was an individual residing in the City of Columbia, Missouri, and the State of Missouri. He is sued in his individual capacity.

37. Upon information and belief, some or all Defendants are insured by one or more policies of liability insurance purchased pursuant to Mo. Rev. Stat. §§ 537.610,

71.185 or other applicable state law with respect to all acts and omissions complained of herein.

## FACTUAL ALLEGATIONS

38. Plaintiff, in 2015, was charged with an arson he never committed. He paid a unconstitutional $5 million dollar cash only bond. In 2016-2017, his bond was revoked and was incarcerated pending his trial on arson.

39. While incarcerated for the arson case, Defendants manufactured a new claim against Plaintiff further depriving Plaintiff of his constitutional rights.

40. Upon information and belief, in an indictment filed in Boone County on January 19, 2018, the following counts were brought against Plaintiff: Count 1 – Arson in the First Degree; Count 2 – Conspiracy to Commit Murder in the First Degree; and Count 3 – Attempted Murder in the First Degree.

41. Upon information and belief, in a second superseding indictment filed in Boone County on February 19, 2021, the following counts were brought against Plaintiff: Count 1 Conspiracy to Commit Murder in the First Degree; Count 2 – Assault in the First Degree or Attempt; Count 3 – Tampering with a Victim or a Witness or Attempt Tampering with Victim in a Felony Prosecution; and Count 4 - Tampering with a Victim or a Witness or Attempt Tampering with Victim.

42. At the time of his incarceration, Plaintiff was a successful business owner, property owner, and engineer who had resided in Missouri for about 50 years.

43. During his incarceration, upon information and belief, Defendants procured false statements and fabricated evidence in order to manufacture new criminal charges against Plaintiff.

44. Defendants claimed that while Plaintiff was in jail, he had hired other inmates and individuals to murder his ex-wife co-defendant Hedieh Fotoohighiam, as well as a Judge.

45. Defendants' probable cause statement against Plaintiff indicated that they obtained statements from inmates who were in jail with Plaintiff claiming that they were offered large sums of money by Plaintiff to kill his ex-wife co-defendant Hedieh Fotoohighiam and a Judge.

46. This probable cause statement was signed by Detective Matt Vessar.

47. Defendants primarily relied on statements made by criminal inmate witnesses to hold Plaintiff in jail until his trial.

48. In fact, it was revealed that one of the "witnesses" who allegedly claimed Plaintiff hired him to kill his ex-wife and the Judge was pressured and told to make such statements by Defendant Officers and Prosecutors.

49. Defendant Justin Todd, a convicted criminal, provided an affidavit highlighting the conspiracy against Plaintiff and deliberate assault on Plaintiff's civil rights.

50. Defendant Justin Todd attested in an affidavit on 7/8/2019 that Detective Vessar wanted "to get" Plaintiff and wanted to put him away. Detective Vessar offered to speak with the prosecutors to drop or reduce Mr. Todd's charges.

51. Defendant Justin Todd attested in an affidavit that Detective Vassar along with Ian Rich set up Plaintiff to be recorded and entrapped.

52. Defendant Justin Todd complied with the set up and affirmed in his affidavit that they did not get anything on Plaintiff.

53. Defendant Justin Todd attested in an affidavit that after the recording of Plaintiff did not succeed, Prosecutor Groenweghe told him what to say in a deposition three days before his own sentencing hearing and promised to get the Judge in his own case to give him minimum time on his charges.

54. Defendant Justin Todd attested in an affidavit that he did not get his charges reduced and that he was not going to lie or condemn an innocent man for a corrupt system.

55. Defendant Justin Todd in his affidavit stated that he was willing to testify in court that Plaintiff was set up and he was not willing to be a part of the States conspiracy against him.

56. Despite this, prosecutors continued their fabricated claims against Plaintiff in hopes of securing a conviction.

57. In trial, it was revealed that Detective Wilson met with Plaintiff undercover, in the attorney client room of the jail.

58. At the time Detective Wilson met with Plaintiff in the attorney client room of the jail, Plaintiff was informed by the jail staff that an attorney was there to see him.

59. Plaintiff met with Detective Wilson in the attorney client room and Detective Wilson attempted to solicit incriminating statements from Plaintiff.

60. Detective Wilson did not inform Plaintiff he was not an attorney.

61. During that conversation, Defendants were unable to obtain any incriminating statements pointing to any conspiracy to commit murder.

62. During the years Plaintiff was in jail, Defendants made multiple attempts to entrap Plaintiff hoping to secure evidence to convict Plaintiff of the conspiracy to commit murder.

63. During Plaintiff's time in jail, it was also revealed that Defendants were recording his attorney client [privileged] phone calls.

64. In a letter to the Judge Ohmer by the prosecution in 2021, Defendants admit that Plaintiff's calls with his attorneys were recorded, and copies were also obtained by Plaintiff's ex-wife's divorce attorney.

65. Defendant prosecutors claimed that they did not listen to any of the recordings, but upon information and belief, charged Plaintiff with additional felonies as a result of the recordings.

66. As one example, Defendant has in their possession a "translation" of a call between Plaintiff and an attorney in Iran offering him legal assistance. This was specifically requested to be translated by Defendant Groenweghe.

67. Upon information and belief, the recording of the calls did not stop. They continued until 2022 despite the "notification" to the presiding judge that the recordings were just discovered.

68. Plaintiff repeatedly identified his attorneys' contact information as "privileged" with the jail staff so that his conversations with his attorneys would not be recorded, throughout his incarceration in Boone County Jail.

69. Upon information and belief, during the years Plaintiff was in jail in 2015-2022, Defendants IC Solutions, Securus Technologies, and CenturyLink Public Communications, were companies that provided telephonic communication and recording equipment to the Boone County Jail during Plaintiff's time in the Boone county jail.

70. Upon information and belief, Defendants IC Solutions, Securus Technologies, and CenturyLink Public Communications, recorded Plaintiff's calls with his attorneys while he was in the jail and shared those recordings with law enforcement agencies, prosecutors, and other third parties.

71. Upon information and belief, at various times during Plaintiff's incarceration at Boone County Jail, Defendants even prevented Plaintiff from making calls to some of his attorneys.

72. Upon information and belief, Defendants deprived Plaintiff of his constitutional rights to an attorney.

73. When Plaintiff did make calls, Defendants recorded those calls and on multiple occasions placed Plaintiff in "disciplinary segregation" in violation of his constitutional rights.

74. It has been discovered that Helen Wade, co-defendant Hedieh Zaerin Fotoohighiam's divorce attorney against Plaintiff, requested specific dates of Plaintiff's privileged phone calls in jail.

75. It has also been discovered that Helen Wade did in fact obtain Plaintiff's recorded phone calls with his attorneys from the jail, against all reasonable policies and procedures.

76. It was also discovered that Helen Wade, a non-party to the criminal case, provided summaries of those calls to the Prosecutors Office.

77. Plaintiff's privileged attorney client communications were provided to third parties without his consent, against all reasonable policies and procedures.

78. Upon information and belief, Defendants Boone County, Carey, Atwell, Vessar, Inmate Calling Solutions, CenturyLink Public Communications, and Securus Technologies recorded and provided Plaintiff's privileged attorney client conversations to various other individuals, against all reasonable policies and procedures.

79. Upon information and belief, Defendants improperly intercepted, disclosed, and/or used, or procured another person to intercept, disclose or use confidential attorney-client communications.

80. Upon information and belief, during Plaintiff's time in the Boone County jail, certain jail officials tampered with and withheld Plaintiff's mail, prevented Plaintiff from receiving and sending out legal mail, and prevented Plaintiff from timely pursuing legal appeals and access to the Courts.

81. Upon information and belief, at various times throughout Plaintiff's incarceration, Plaintiff was denied medical care when needed, and instead was placed in disciplinary segregation.

82. Upon information and belief, during Plaintiff's time in jail, he was injured and denied medical care.

83. Upon information and belief, Defendants failed to protect Plaintiff from sustaining injuries, failed to properly document his injuries, tampered with his medical records, and failed to give him proper medical attention.

84. Upon information and belief, John and Jane Doe are individuals who deprived Plaintiff of medical treatment for his injuries and/or falsified his medical records during his time in the Boone County Jail.

85. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

86. During his time in jail, Plaintiff was faced with punishments that included solitary confinement, psychiatric holds, and other cruel and unusual punishments such as being denied the Covid-19 vaccine.

87. In fact, in an interview with inmate Anquan Glover, Mr. Glover informed Detective Vessar that at one point Plaintiff was vomiting in his cell and Glover was trying to get the attention of the staff at the jail to help out Plaintiff. He stated that the staff told him that if Plaintiff needed to see the nurse, he could put in a sick call request.

88. Notably, Glover also informed Detective Vessar of Ian Rich's plan to keep Plaintiff in jail and convicted. Detective Vessar intentionally ignored the information provided by Glover in an effort to continue with the wrongful prosecution against Plaintiff.

89. Upon information and belief, as an example, Plaintiff sustained injuries as a result of liquid materials being thrown into his jail cell causing him to slip and fall.

90. Defendant Hedieh at all relevant times conspired with various Defendants to place Fotoohighiam in jail for the remainder of his life.

91. Defendant Hedieh, along with co-Defendant Rastkar upon information and belief knew about this "murder plot" before Fotoohighiam was even charged with the crime.

92. Defendant Hedieh made false claims in Court to obtain protective orders against Plaintiff in order to solidify the prosecutions claims against Plaintiff despite the allegations being knowingly false.

93. For example, in a petition for a protective order, Hedieh falsely claimed that Plaintiff was forcing her to have sex with him and threatened to pay a man $50 dollars to rape her.

94. However, in a hearing before Judge Ohmer, she also falsely stated that Fotoohighiam threatened to pay a man $50 dollars to rape her if she divorced Plaintiff.

95. She falsely claimed that Fotoohighiam forced her and her kids to live in fear in an attempt to keep Fotoohighiam incarcerated and prevent bond.

96. In a letter to the victim advocate in 2020, Hedieh also made false claims that her life was in danger if Fotoohighiam was released from jail.

97. She even falsely claimed that she was living on the run as an attempt to hold Plaintiff in jail despite there being no evidence to support these contentions.

98. Hedieh conspired with the Sheriffs and Prosecutors to manufacture claims against Plaintiff to keep him incarcerated and bolster their conspiracy to commit murder case that was on life support.

99. Defendant Hedieh in a hearing regarding Plaintiff falsely stated to the Court that the Plaintiff was dangerous despite admitting that Plaintiff has never hit her before.

100. Defendants ignored Anquan Glover and Justin Todd who both claimed that Plaintiff was being framed.

101. Defendants' plots against Plaintiff eventually failed when Judge Ohmer acquitted Plaintiff on all the charges against him.

## DAMAGES

102. The unlawful, intentional, willful, deliberately indifferent, and reckless acts and omissions of all Defendants caused Plaintiff Fotoohighiam to be improperly arrested and imprisoned, unfairly tried, deprived of his constitutional civil rights, and forced to serve nearly 6 years in jail for crimes he did not commit.

103. As a direct result of Defendants actions and omissions, Fotoohighiam sustained injuries and damages, including but not limited to loss of his freedom for nearly 6 years, loss of his reputation, financial assets, income, businesses, properties, pain and suffering, mental anguish, emotional distress, indignities, degradation, permanent loss of his life's work, restrictions on all forms of personal freedom including but not limited to diet, sleep, proper medical care, personal contact, personal fulfillment, family relations, reading, traveling, television, movies, enjoyment, and freedom of speech and expression.

104. As a direct result of Defendants' actions and omissions, Fotoohighiam was deprived of his familial relationships, including his relationships with his children along with his sisters, one of whom was under Plaintiffs care and financial support, and who tragically passed away while Plaintiff was wrongfully incarcerated.

105. As a direct result of Defendants' actions and omissions, Fotoohighiam sustained economic injuries and damages including loss of income and loss of all of his business and real estate ventures and has caused Plaintiff to become indigent.

106. As a direct result of Defendants' actions and omissions, Fotoohighiam sustained physical injuries and damages, including physical pain and suffering, personal injuries, physical illness, abuse in prison, and inadequate medical care.

## CAUSES OF ACTION

### COUNT I:

**42 U.S.C. § 1983 Deprivation of Liberty without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Conducting a Reckless Investigation**

*Against Boone County by and through its Board of Commissioners, Prosecutor Roger Johnson, Prosecutor Groenweghe, Atwell, Wilson, Vessar, Perkins, John Doe 1-30, Jane Doe 1-30, Hedieh Zaerin Fotoohighiam, Rastkar, Rich, Todd.*

107. Plaintiff incorporates by reference all of the foregoing paragraphs.

108. Defendants, individually and in concert, fabricated false evidence to support their prosecution of Mehrdad Fotoohighiam, suppressed exculpatory and impeachment evidence, failed to investigate in a manner that shocks the conscience, and instead followed through with the unlawful prosecution of Plaintiff, thereby depriving Fotoohighiam of his right not to be deprived of liberty without due process of law. The Defendants caused false evidence to be procured and used against Plaintiff in his prosecution and at trial.

109. Defendants likewise failed to conduct a proper investigation and investigate exculpatory evidence that would have proven the innocence of Plaintiff.

110. Defendants ignored clear evidence that Plaintiff was innocent, and rather than investigate the veracity of the "conspiracy to commit murder" allegations, intentionally and in bad faith set about to violate Fotoohighiam's due process rights.

111. The Defendants intentionally and/or recklessly fabricated false evidence inculpating Fotoohighiam. As an example, they intentionally and or recklessly fabricated that Justin Todd identified that Mehrdad informed him that he wanted Todd to kill various individuals.

112. Likewise, Defendants Hedieh, Rastkar, and Rich fabricated claims and made false statements against Plaintiff to investigators.

113. Defendant Justin Todd revealed that Defendants intentionally sought for him to implicate Plaintiff in exchange for having his charges reduced or dropped.

114. Detective Vessar improperly authorized Todd to fabricate claims against Plaintiff and Todd affirmed in an affidavit that Detective Vessar wanted Plaintiff "bad enough" and "wanted him put away."

115. Justin Todd in his affidavit affirmed that he and Ian Rich cooperated and attempted to entrap Plaintiff into things the detectives could use in a context to hurt his case. However, Todd revealed that they did not get anything on Plaintiff.

116. To further bolster their manufactured claims, Todd stated that Prosecutor Groenweghe told him what to say at a deposition on a Saturday - three days before his sentencing on May 14 - and promised to get the judge in his case to give him minimum time on his charges.

117. Todd in his affidavit stated that he is not going to lie or condemn an innocent man for a corrupt system. He is willing to testify that Plaintiff was set up and he is ashamed he was part of the States conspiracy to frame an innocent man.

118. Despite the fact that Justin Todd was one of the individuals who was the basis for the probable cause statement by Detective Vessar, Defendants did not even call him to testify in trial.

119. Defendants refused to pursue any investigation into the veracity of Ian Rich's statements, his credibility, or motive, considering that Ian Rich's father was fired

by Plaintiff for misconduct in his company, and that Ian Rich used to mow Plaintiff's lawn at his home.

120. Defendants failed to come forward with all known exculpatory information, thereby obstructing justice.

121. Defendants intentionally and/or recklessly fabricated evidence that Plaintiff had intended to commit murder of his ex-wife and a Judge, including without limitation the following evidence:

a. Detective Vessar fabricated that there was a plot by Plaintiff to murder his ex-wife, her boyfriend, and a judge.

b. Detective Vessar solicited fabricated information from inmates including but not limited to Justin Todd as a basis for bringing charges.

c. Detective Vessar failed to follow and pursue leads that would have exculpated Plaintiff including statements from Anquan Glover, Justin Todd, and others.

d. Detective Vessar promised Todd to speak to prosecutors to reduce his charges in order to get information on Plaintiff.

e. Detectives participated in multiple attempted entrapments against Plaintiff.

f. Prosecutor Groenweghe told Justin Todd what to say in a deposition in order to secure a conviction against Plaintiff.

g. Detective Wilson appeared undercover in jail and met with Plaintiff in the attorney-client room without revealing that he was not an attorney.

122. Defendants Vessar, Wilson, and Perkins fabricated a claim against Plaintiff for a conspiracy to commit murder based on knowingly inaccurate statements by witnesses these individual detectives coerced, and forced to make.

123. Specifically, Aaron Greenup in a recently signed affidavit attested that he was offered by Detective Perkins to have his charges reduced in exchange for making the statements the detectives wanted him to make against Plaintiff.

124. Greenup agreed, and after the prosecutors dropped Justin Todd as a witness, they requested Greenup to appear to testify against Plaintiff to make the statements the Detectives wanted him to say.

125. However, during his deposition, it was exposed that Greenup was not testifying based on his own knowledge.

126. After his deposition, Greenup was coerced to leave Missouri for Mehrdad's criminal trial and was informed by the Detectives that they would state Plaintiff threatened Greenup as the basis for why Greenup left Missouri before the trial.

127. Additionally, Greenup attests that Vessar told him personally that he would make sure Greenup did time if he went back on the statements he originally made against Plaintiff.

128. Additionally, in an affidavit by Cheyenne Greenup, she attests she personally witnessed Perkins and Vessar constantly harass Aaron Greenup by threatening to bring charges against him if he didn't say what they wanted him to say about Mehrdad.

129. Cheyenne also confirmed that she heard Aaron tell Vessar he did not want to testify and Vessar again threatened Aaron that if he doesn't testify and take his testimony back, he will pick his charges back up and do time.

130. Upon information and belief, neither of these individuals recanting their statements was ever brought forward before the Court in a proceeding.

131. Upon information and belief, John and Jane Doe are individuals who deprived Plaintiff of medical treatment for his injuries and/or falsified his medical records during his time in the Boone County Jail.

132. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

133. Justin Todd recanted the testimony he made against Plaintiff in a signed affidavit that was notarized in 2019.

134. Likewise, Vessar's conduct with Todd and Greenup was not litigated, reviewed or decided by a Court, and was the very basis of the false allegations against Plaintiff that was used against him from the inception of the charges to his eventual acquittal.

135. Defendant Wilson held himself out as an attorney to Plaintiff by meeting with Plaintiff in the Boone County Jail's attorney-client room.

136. Boone County jail officials informed Plaintiff that an attorney was there to speak with him when in fact it was Wilson acting as an attorney.

137. Plaintiff had no knowledge that Wilson was not an attorney but an officer attempting to solicit incriminating information from him under the guise of attorney-client privilege.

138. Defendant's Johnson and Groenweghe at all times knew that the claims against Plaintiff were fabricated and based on coerced information that these individuals were instructed to fabricate.

139. Defendants failed to inform Plaintiff of their coercion and fabrication of claims against him through the use of these witnesses.

140. Defendants acting in concert, allowed Wilson to hold himself out as an attorney in an attempt to secure information and potentially incriminating information from the Plaintiff.

141. Defendant's held Plaintiff in jail for years without probable cause and evidence to support the charges against him. As a result, Plaintiff's constitutional rights were violated.

142. In addition, Defendants concealed and suppressed exculpatory and impeachment evidence as a part of a scheme to deliberately deceive the Court in violation of the constitution, *Brady v. Maryland*, 373 U.S. 83 (1963), its progeny, and related cases. Defendants also suppressed evidence of their investigative misconduct.

143. Defendants also intentionally and/or recklessly failed to investigate evidence of Mehrdad Fotoohighiam's innocence. For example, Defendant's ignored

interviews and statements by witnesses of Plaintiff's innocence, made no attempts to corroborate any alibi, failed to pursue any avenue other than Plaintiff.

144. The foregoing acts and omissions were deliberate, reckless, wanton, cruel, motivated by evil motive or intent, done in bad faith, and/or involved callous indifference to Fotoohighiam's federally protected rights. These acts were perpetrated while Defendants were acting in their official capacities and under color of state law.

145. Defendants concealed the existence of and/or failed to develop exculpatory evidence, including pursuing evidence pointing towards the true perpetrators, and concealed the leading, suggestive, or improper tactics they used on their witnesses.

146. Defendants continued this fabrication through trial.

147. Justin Todd revealed the truth by signing a notarized affidavit in 2019 attesting to the fabrication developed and forced upon him by detectives and prosecution against Mehrdad Fotoohighiam.

148. Defendants Hedieh and Rastkar conspired with co-Defendants to keep Plaintiff in jail by fabricating attempts and threats to Plaintiff on her life.

149. For example, Defendant Rastkar falsely claimed that Fotoohighiam put a bounty on his head despite no evidence to support this.

150. Defendant Rastkar worked with Hedieh to fabricate claims of threats by Plaintiff on Hedieh and her children.

151. Defendant Rastkar, a felon, falsely claimed that Plaintiff terrorized his children.

152. Defendant Hedieh made false claims that Plaintiff was threatening her and threatening to have her raped every time there was an attempt to release Plaintiff on bond. The reason for the rape kept changing.

153. Defendant Hedieh also fabricated claims that Plaintiff threatened to kill her despite this never occurring and changed her story numerous times to fit her narrative.

154. Defendant Hedieh falsely accused Plaintiff of fraud and forging her signature hoping that Plaintiff would not get a bond to be released from jail.

155. Defendant Hedieh conspired with Defendant Sheriffs and prosecutors to keep Plaintiff in jail for the rest of his life.

156. Despite this, Defendants continued to unjustly pursue Plaintiff in a criminal prosecution and forced Plaintiff into a criminal trial with his freedom on the line.

157. As a direct and proximate result of the Defendants actions, Plaintiff was wrongfully prosecuted, detained, and incarcerated for at least three years and suffered the grievous injuries and damages set forth above.

**COUNT II:**
**42 U.S.C. § 1983 Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments**

*Against Individual Defendants Johnson, Groenweghe, Wilson, Vessar, Perkins, John Doe 1-30, Jane Doe 1-30, Hedieh Fotoohighiam, Rastkar, Rich, Todd*

158. Plaintiff incorporates by reference all of the foregoing paragraphs.

159. The Individual Defendants, acting individually and in concert, with malice and knowledge that probable cause did not exist to prosecute Plaintiff, intentionally caused Fotoohighiam to be wrongfully incarcerated and prosecuted for nearly five years, thereby violating Fotoohighiam's clearly established right, under the Fourth and Fourteenth Amendments of the U.S. Constitution, to be free of prosecution.

160. Defendants Vessar, Wilson, and Perkins fabricated a claim against Plaintiff for a conspiracy to commit murder based on knowingly inaccurate statements by witnesses these individual detectives coerced, and forced to make.

161. Specifically, Aaron Greenup in a recently signed affidavit attested that he was offered by Detective Perkins to have his charges reduced in exchange for making the statements the detectives wanted him to make against Plaintiff.

162. Greenup agreed, and after the prosecutors dropped Justin Todd as a witness, they requested Greenup to appear to testify against Plaintiff to make the statements the Detectives wanted him to say.

163. However, during his deposition, it was exposed that Greenup was not ~~saying statements~~ testifying based on his own knowledge.

164. After his deposition, Greenup was coerced to leave Missouri for Mehrdad's criminal trial and was informed by the Detectives that they would state Plaintiff threatened Greenup as the basis for why Greenup left Missouri before the trial.

165. Additionally, Greenup attests that Vessar told him personally that he would make sure Greenup did time if he went back on the statements he originally made against Plaintiff.

166. Additionally, in an affidavit by Cheyenne Greenup, she attests she personally witnessed Perkins and Vessar constantly harass Aaron Greenup by threatening to bring charges against him if he didn't say what they wanted him to say about Mehrdad.

167. Cheyenne also confirmed that she heard Aaron tell Vessar he did not want to testify and Vessar again threatened Aaron that if he doesn't testify and take his testimony back, he will pick his charges back up and do time.

168. In addition to the Greenup's, Todd also attested in his affidavit that Vessar requested him and Ian to set Mehrdad up in exchange for charges reduced. They cooperated but did not get anything on Mehrdad.

169. Todd further attested that he was told what to say at his deposition and was promised to get minimum time on his charges.

170. Detectives Vessar and Perkins knew the information they were obtaining from the "witnesses" were false at the time they were made and fabricated in order to secure a conviction.

171. Detectives Vessar and Perkins knew that the statements made by these individuals were untrue and the basis for bringing charges did not hold weight.

172. Defendant's knew that Justin Todd recanted his statements and knew that Aaron Greenup was not going to fabricate claims against Mehrdad based on the statements these detectives wanted him to state.

173. Upon information and belief, neither of these individuals recanting their statements was ever brought forward before the Court in a proceeding.

174. Justin Todd recanted the testimony he made against Plaintiff in a signed affidavit that was notarized in 2019.

175. Likewise, Vessar's conduct with Todd and Greenup was not litigated, reviewed or decided by a Court, and was the very basis of the false allegations against Plaintiff that was used against him from the inception of the charges to his eventual acquittal.

176. Defendant Wilson held himself out as an attorney to Plaintiff by meeting with Plaintiff in the Boone County Jail's attorney-client room.

177. Boone County jail officials informed Plaintiff that an attorney was there to speak with him when in fact it was Wilson acting as an attorney.

178. Plaintiff had no knowledge that Wilson was not an attorney but an officer attempting to solicit incriminating information from him under the guise of attorney-client privilege.

179. Defendant's Johnson and Groenweghe at all times knew that the claims against Plaintiff were fabricated and based on coerced information that these individuals were instructed to fabricate.

180. In fact, Groenweghe is specifically addressed by Todd as one of the individuals who told him what to say in his deposition three days before his sentencing hearing.

181. Defendant's did not have probable cause to detain and charge Plaintiff with this conspiracy because they fabricated these statements by the "witnesses" in order to bring forward these charges.

182. Defendant's motives were malicious in that despite knowing that the statements against Plaintiff were untrue, they continued to pursue the charges against him.

183. Defendant Hedieh also fabricated claims that Plaintiff threatened to kill her despite this never occurring and changed her story numerous times to fit her narrative.

184. The Individual Defendants, acting individually and in concert, fabricated evidence, withheld and misrepresented exculpatory evidence, and failed to investigate in a manner that shocks the conscience, all of which resulted in an arrest and prosecution for 5 years without probable cause.

185. The Individual Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Fotoohighiam's clearly established constitutional rights. No reasonable individual would have believed this conduct was lawful.

186. Defendants held Fotoohighiam in jail and continued to prosecute Fotoohighiam even after knowing that Plaintiff did not commit the alleged crimes.

187. On April 7, 2022, Fotoohighiam was fully exonerated and found not guilty of all charges in a bench trial before the Honorable Judge Ohmer.

188. The acts and omissions by the Individual Defendants described in the preceding paragraphs were the direct and proximate cause of Fotoohighiam's injuries because the Individual Defendants knew, or should have known, that their conduct would result in the wrongful arrest, prosecution, and imprisonment of Fotoohighiam.

**COUNT III:**
**42 U.S.C. § 1983 Civil Rights Conspiracy**

*Against Individual Defendants Johnson, Groenweghe, Carey, Atwell, Vessar, Perkins, Wilson, John Doe 1-30, Jane Doe 1-30, Hedieh Zaerin Fotoohighiam, Rich, Rastkar, Todd*

189. Plaintiff incorporates by reference all the foregoing paragraphs.

190. The acts and omissions by the Defendants described in the preceding paragraphs were the direct and proximate cause of Fotoohighiam's injuries because the Defendants knew, or should have known, that their conduct would result in the wrongful, arrest, prosecution, imprisonment, and deprivation of civil rights of Fotoohighiam.

191. Defendants and others yet unknown agreed among themselves to act in concert to deprive Fotoohighiam of his clearly established constitutional rights as protected by the Fourth and Fourteenth Amendments, including his right not to be deprived of liberty and property without due process of law.

192. Defendants engaged in and facilitated numerous overt acts in furtherance of the conspiracy, including but not limited to, the following:

a. Acting in concert with Detectives, Prosecutors, witnesses Justin Todd, Aaron Greenup, Ian Rich, Ali Rastkar, Hedieh Fotoohighiam, and other individuals used suggestion, manipulation, and pressure when speaking with Justin Todd, Aaron Greenup, Ian Rich, and Ali Rastkar to fabricate false and unreliable statements, identifications, and incentivized their cooperation through various means including but not limited to removal/reduction of their criminal charges.

b. Acting in concert with Defendants, Detectives, Prosecutors, and witnesses, Defendants Vessar and Groenweghe fabricated false statements from Justin Todd in order to inculpate Fotoohighiam, steer the investigation solely towards Fotoohighiam, and bolster their fabricated identifications from other witnesses including but not limited to Ian Rich, Anquan Glover, and others.

c. Acting in concert with Defendants, Detectives, Prosecutors, and witnesses, Defendants Vessar and Groenweghe fabricated false statements from Aasron Greenup in order to inculpate Fotoohighiam, steer the investigation solely towards Fotoohighiam, and to pressure Greenup to leave Missouri prior to Fotoohighiam's trial in order to prevent him from being cross examined.

d. Acting in concert with Jennifer Atwell to record Plaintiff's conversations with his attorney's despite Plaintiff having provided the officers at the jail

all of his attorney's contact information to prevent the recording of phone calls with his attorneys.

e. Despite this, Defendants including Atwell continued to record Plaintiff's conversations with his attorneys to be used in court proceedings against the Plaintiff.

f. Upon information and belief, acting in concert, Defendant Carey responded to Plaintiff's grievances with placements in solitary confinement or disciplinary segregation, withholding of notices to Plaintiff regarding certain proceedings and sales of his assets in direct violation of due process, and disparately treating Plaintiff, including but not limited to, deliberately refusing to provide Plaintiff with the Covid-19 vaccine despite Plaintiff's request for it and changing the jail handbook when Plaintiff would file grievances.

g. Acting in concert, Defendants fabricated false evidence that incriminated Fotoohighiam.

h. Defendants Vessar and Perkins acted to fabricate evidence against Plaintiff through the use of coercion of witnesses to falsify statements against Plaintiff in order to secure charges and a conviction against him as outlined in the Counts above.

i. Defendant Wilson acted and held himself out as an attorney when interviewing Plaintiff in the attorney-client room of the jail.

j. Defendants acted together in order to fabricate these charges against Plaintiff in order to secure a conviction.

k. Defendants coerced Greenup to leave Missouri prior to Plaintiff's criminal trial to prevent his cross examination by the Defense and revelation of the coercion.

l. Acting in concert to recklessly and deliberately fail to investigate any exculpatory evidence.

m. Acting in concert to continue prosecuting Fotoohighiam and hold him in jail, despite knowing that the information against Plaintiff was manufactured and fabricated.

n. Engaged in numerous entrapments of Plaintiff in an effort to implicate him in a crime he never committed.

o. Acting in concert to have Defendant Wilson go undercover and meet with Plaintiff in the attorney client room in jail without ever revealing to the Plaintiff that Wilson was in fact not an attorney when meeting with him.

p. Acting in concert with Hedieh and Rastkar to hold Plaintiff in jail and prevent him from obtaining a bond by manufacturing claims that he was threatening to kill, harm, rape, and target Hedieh, despite there being no evidence to support these contentions.

q. Acting in concert to manufacture claims each time Plaintiff made an attempt to be released on bond in order to convince the Court to deny bond.

r. Plaintiff was deprived of his freedom and forced to stand trial for crimes he did not commit.

s. Upon information and belief, John and Jane Doe are individuals who deprived Plaintiff of medical treatment for his injuries and/or falsified his medical records during his time in the Boone County Jail.

t. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

193. As a direct and proximate result of Defendants overt acts, Fotoohighiam was deprived of his constitutional rights, wrongly prosecuted, detained, and incarcerated for over 3 years; and subjected to other grievous injuries and damages as set forth above.

**COUNT IV:**
**42 U.S.C. § 1983 Failure to Intervene**

*Against Individual Defendants Johnson, Groenweghe, Carey, Atwell, Wilson, Vessar, Perkins, John Doe 1-30, Jane Doe 1-30*

194. Plaintiff incorporates by reference all the foregoing paragraphs.

195. By their conduct and under color of state law, Defendants, acting withing the scope of their employment with Defendants Boone County Sheriff's Department, Prosecutors Office, and in their individual capacities, had opportunities to intervene on behalf of Mehrdad Fotoohighiam to prevent his wrongful arrest, wrongful imprisonment, abuse of process, and deprivation of liberty and property without due process of law, but with deliberate indifference, declined to do so.

196. Defendant's Johnson, Groenweghe, Vessar, and Perkins knew that the statements made by Todd and Greenup were false and fabricated.

197. Defendant's Johnson, Groenweghe, Vessar, Perkins, and Wilson, knew that Wilson meeting with Plaintiff in the attorney-client room of the jail while holding himself out as an attorney would violate Plaintiff's attorney-client protections under the law.

198. Defendant's informed Plaintiff through the jail that an attorney was there to meet with Plaintiff despite knowing that Wilson was not an attorney but rather a Boone County officer.

199. Defendant Atwell had access to the jail calling system and the ability to list all attorney's numbers to be privileged and unrecorded in the system.

200. Plaintiff provided a list of his attorneys' along with their numbers to Defendants and Atwell on multiple occasions.

201. Despite this, Defendants recorded Plaintiff's attorneys calls and disseminated those calls to third parties in order to be used against Plaintiff in Court.

202. Upon information and belief, Defendant Carey failed in his supervisory role to intervene and prevent the violations of Plaintiff's rights by his officers while Plaintiff was in jail.

203. Defendant Carey had the opportunity to prevent these violations and put a stop to them but consistently allowed for violations to occur, including but not limited to, fabrication of evidence but his deputies and the recording of Plaintiff's attorney-client conversations.

204. Each Defendant had the opportunity to prevent these violations or put a stop to the violations.

205. Defendant's failed to intervene to prevent the continuous constitutional violations to Plaintiff.

206. Defendants knew that they were requesting these individuals to make false statements against Plaintiff in exchange for reductions on charges and sentences.

207. Defendant's knew that these fabrications would lead to Plaintiff being deprived of his freedom, would be used to hold Plaintiff in jail and potentially convict him, and deprive him of his family, social status, and businesses.

208. Defendants' failures to intervene violated Fotoohighiam's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty and property without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable police officer would have believed that failing to intervene to prevent the Defendants from fabricating inculpatory evidence, withholding material exculpatory evidence, deliberately failing to conduct a constitutionally adequate investigation, and causing Fotoohighiam to be arrested, imprisoned, and prosecuted without probable cause, were lawful.

209. Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Fotoohighiam's injuries. Defendants knew, or should have known, that their conduct would result in Fotoohighiam's wrongful arrest, prosecution, and imprisonment.

210. Plaintiff suffered severe damages including being held in jail for years, forced to stand trial, loss of freedom, the use of privileged conversations against him, loss of earning, mental pain and suffering, loss of social and economic pleasures, and loss of enjoyment of life.

## COUNT V:
## 42 U.S.C. § 1983 Supervisor Liability Claim

*Against the Boone County by and through its Board of Commissioners, Individual Defendants Johnson, Groenweghe, Carey, Wilson, Vessar, Perkins, John Doe 1-30, Jane Doe 1-30*

211. Plaintiff incorporates by reference all of the foregoing paragraphs.

212. Fotoohighiam's wrongful arrest, confinement, prosecution, trial, and incarceration was caused by the unconstitutional actions and inactions of Defendants Wilson, Vessar, Perkins, the jail employees, and the prosecutors acting in their individual capacity and under color of law.

213. Defendant Vessar directly participated in the misconduct that resulted in the wrongful arrest, prosecution, incarceration, and the unjust trial. Specifically, Defendant Vessar directed and lead the other Defendant detectives, and unknown other investigators, to charge Fotoohighiam without reliable evidence, approved reports containing fabricated evidence, and knew that the evidence implicating Fotoohighiam was unreliable, and that any such corroboration was only the result of manipulation, and misconduct.

214. Defendant Wilson, upon information and belief, directly participated in the misconduct that resulted in the wrongful arrest, prosecution, incarceration and trial. He participated in an attempted entrapment in the jail by going undercover

and meeting Plaintiff in the attorney client room without ever informing Plaintiff he was not an attorney.

215. Defendants Boone County and Carey directly participated in the misconduct that resulted in the wrongful arrest, prosecution, incarceration and trial. Upon information and belief, they informed Plaintiff an attorney was there to see him when in fact it was Detective Wilson acting undercover to attempt to entrap Plaintiff. Defendants Boone County, through its inmate calling service providers, also improperly recorded conversations between Plaintiff and his attorneys and provided those conversations to a third party, Helen Wade.

216. Upon information and belief, Defendant Carey failed in his supervisory role to intervene and prevent the violations of Plaintiff's rights by his officers while Plaintiff was in jail.

217. Defendant Carey had the opportunity to prevent these violations and put a stop to them but consistently allowed for violations to occur, including but not limited to, fabrication of evidence but his deputies and the recording of Plaintiff's attorney-client conversations.

218. Defendant prosecutors directly participated in the misconduct that resulted in Fotoohighiam's wrongful arrest, prosecution, incarceration, and trial. Defendant prosecutors coerced, approved, directed, and/or acquiesced to detectives coercing witnesses to implicate Fotoohighiam despite knowing that the evidence was unreliable, false, manufactured, and based on suggestion and leading of Defendants.

219. Defendant Vessar further reviewed and approved the application for charges submitted to the Defendant Boone County Prosecutors Office, despite the lack of reliable evidence against Plaintiff.

220. Defendant Vessar knew that Justin Todd and Ian Rich's identifications and statements were unreliable and only the result of manipulation, suggestion, and misconduct. As the lead investigator, and person in charge of the investigation, Defendant Vessar was aware of the fabrications and either acquiesced to or directed them.

221. Defendant Vessar knew that Perkins was soliciting false and fabricated information from Greenup against Plaintiff.

222. Defendants Johnson and Groenweghe knew that the evidence being gathered by the officers was fabricated, false, and inaccurate.

223. Defendants Wilson, Vessar, Perkins, and the prosecution knowingly refused to terminate the wrongful prosecution of Fotoohighiam, which upon information and belief, they knew or should have known had been initiated based on fabricated evidence, in spite of suppressed exculpatory information. As a result, Defendants knew or reasonably should have known, that Fotoohighiam's constitutional rights to be free from unreasonable seizure and not to be deprived of liberty and property without due process of law would be violated.

224. Defendant Atwell was upon information and belief was in charge of and had direct access to the jail call system and failed to prevent the recording and

dissemination of Plaintiff's attorney client calls and failed to place the numbers of Plaintiff's attorneys as privileged in the jail system.

225. Defendants, Vessar, Atwell, and other Defendants, culpably failed to adequately train, supervise, discipline, and/or control their subordinates, including other investigators in the investigative team, who obtained and fabricated testimony, evidence, ignored evidence suggesting Fotoohighiam's innocence, and obtained illegally recorded attorney-client telephonic conversations.

226. On multiple occasions, Defendant Boone County culpably failed to adequately train, supervise, discipline, and/or control their subordinates, including their employees by allowing them to record and distribute to third parties Fotoohighiam's privileged attorney client conversations, depriving him of access to his attorneys, thereby failing to prevent multiple material violations of his constitutional rights.

227. Defendant Boone County implemented a custom of allowing all calls including those listed as attorney-client calls to be recorded and subsequently disseminated to third parties without consent of the privileged parties.

228. Defendant Vessar, Groenweghe, and Atwell had knowledge of these violations and failed to prevent them.

229. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

230. Defendants violated Fotoohighiam's constitutional rights by acquiescing in the deprivation of his constitutional rights by their subordinates, and by generally showing a reckless or callous indifference to his rights.

231. Defendant's failure to train, supervise, discipline, and/or control their subordinates, their indifference to the actions of their subordinates, and their indifference to Fotoohighiam's rights, encouraged and permitted their subordinates to fabricate evidence, fail to document and disclose exculpatory evidence, ignore evidence suggesting Fotoohighiam's innocence, encouraged and permitted their subordinates to record privileged attorney-client conversations and distribute them, and allow Plaintiff to be injured in the Boone County Jail.

232. The actions and omissions of Defendants' caused Fotoohighiam to suffer constitutional deprivations and grievous personal injuries and damages described above.

## COUNT VI:
## 42 U.S.C. § 1983, 4th Amendment, 5th Amendment, 6th amendment, 18 U.S.C. § 2510 *et seq.* Improper Recording of Attorney Client Conversations

*Against Defendants Boone County by and through its Board of Commissioners, Individual Defendants Johnson, Groenweghe, Atwell, Vessar, John Doe 1-30, Jane Doe 1-30, Inmate Calling Solutions, LLC d/b/a IC Solutions, LLC, Securus Technologies LLC, CenturyLink Public Communications, Inc.*

233. Plaintiff incorporates by reference all the foregoing paragraphs.

234. Defendants actions in intercepting, recording, and disclosing Plaintiff's confidential telephonic conversations with his attorneys constitutes illegal search in violation of the Fourth Amendment and violates 18 U.S.C. § 2510 *et seq.*

235. Defendants actions in disclosing the contents of Plaintiff's recorded conversations violates 18 U.S.C. § 2510 *et seq*.

236. Defendant's actions in translating the contents of Plaintiff's recorded conversations violates 18 U.S.C. § 2510 *et seq*.

237. Upon information and belief, Defendants improperly intercepted, disclosed, and/or used, or procured another person to intercept, disclose or use confidential attorney-client communications.

238. Defendant Jennifer Atwell and other Boone County Sheriffs in the jail at all relevant times had access to, control of, and monitored the jail recording systems.

239. Defendant Atwell upon information and belief was trained on the telephone communications software and had control over the computer system with the ability to designate calls as non-recordable for attorney-client calls.

240. Defendant Atwell and other jail Sheriffs at all times were informed by Plaintiff of the contact numbers and information for his attorney's.

241. Defendant Atwell and other jail Sheriffs intentionally failed to designate Plaintiff's attorneys as privileged in the jail or jail call recording system.

242. Defendant Atwell and other jail Sheriffs, along with the named jail phone call service provider Defendants recorded Plaintiff's attorney-client conversations on numerous occasions.

243. Defendants Atwell, Vessar, the prosecutors, Inmate Calling Solutions, LLC, and CenturyLink Public Communications, Inc., recorded and disseminated

Plaintiff's attorney-client conversations to third parties not privy to those conversations from 2018-2022.

244. Upon information and belief, Defendants Atwell, Vessar, the prosecutors, and Securus Technologies, recorded and disseminated Plaintiff's attorney-client conversations to third parties not privy to those conversations from 2016-2018.

245. Upon information and belief, Defendant Boone County maintains an unconstitutional and illegal policy of intercepting, recording, and disclosing the telephone conversations of attorney client communications while individuals are in jail.

246. Upon information and belief, Defendants Inmate calling Solutions, LLC, Securus Technologies, and CenturyLink Public Communications, Inc., recorded Plaintiff's calls with his attorneys while he was in the jail and shared those recordings with law enforcement agencies, prosecutors, and other third parties.

247. The actions of Defendants in intercepting and disclosing Plaintiff's telephonic conversations with his attorney's constitutes violations of his constitutional rights.

248. Defendant Boone County, was negligent in training and supervising its officers, and the jail employees such that they were permitted to record, intercept, and disclose attorney client conversations.

249. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the recording of Plaintiff's conversations with his attorneys.

250. Defendants Inmate Calling Solutions, LLC, Securus Technologies, and CenturyLink Public Communications, Inc., were negligent in recording the Plaintiff's conversations with his attorneys and sharing those recordings with law enforcement agencies, prosecutors, and other third parties during his time in the Boone County Jail.

251. Defendants violated Plaintiff's right to privacy for his conversations with his attorney.

252. The attorney-client relationship is a cornerstone of the legal system and entitles all individuals to the same privileges and protections.

253. Defendants violated Plaintiff's right to counsel and to seek protected communications with his attorney's without fear of third parties intercepting those conversations.

254. Defendants collectively violated Plaintiff's due process rights and right to counsel by intercepting, recording, and disseminating his attorney client conversations.

255. Defendants intentionally intercepted, recorded, and disseminated Plaintiff's attorney client conversations.

256. The interception, recording, and dissemination was done without the consent of the parties to the attorney-client relationship and despite Plaintiff listing to the jail the contact information for his attorney's.

257. Attorney's and clients have expectations of privacy to their communications at all times.

258. The acts and omissions of Defendants constitute clear violations of constitutional rights, invasion of privacy, violation of the attorney client confidential relationship, and deprivation of his rights.

**COUNT VII:**
**Violation of Missouri Wiretap Statute**

*Against Boone County Inmate Calling Solutions, LLC, Securus Technologies LLC., CenturyLink Public Communications, Inc., Groenweghe, Johnson, Atwell, Vessar, John Doe 1-30, Jane Doe 1-30*

259. Plaintiff incorporates by reference all of the foregoing paragraphs.

260. The Missouri wiretap statute broadly prohibits the interception, disclosure or use of any wire, oral or electronic communication.

261. Defendants have violated Plaintiff's rights under the Missouri Wiretap statute.

262. Defendants have acted unlawfully to intercept communications between Plaintiff and his attorney's and disclosed those confidential communications to third parties, including but not limited to law enforcement, prosecutor's office, and third-party attorneys who did not represent Plaintiff, in violation of the Act.

263. Defendants' violated the Missouri Wiretap Act when they:

   a. Intercepted, disclosed, used, or procured other persons to intercept, disclose or use communications between Plaintiff and his attorneys'. Mo Rev. Stat. § 542.418.

264. Defendants knowingly recorded Plaintiff's communications with his attorneys despite these communications being privileged.

265. Defendant Jennifer Atwell and other Boone County Sheriffs in the jail at all relevant times had access to, control of, and monitored the jail recording systems.

266. Defendant Atwell upon information and belief was trained on the telephone communications software and had control over the computer system with the ability to designate calls as non-recordable for attorney-client calls.

267. Defendant Atwell and other jail Sheriffs at all times were informed by Plaintiff of the contact numbers and information for his attorney's.

268. Defendant Atwell and other jail Sheriffs intentionally failed to designate Plaintiff's attorneys as privileged in the jail or jail call recording system.

269. Defendant Atwell and other jail Sheriffs, along with the named jail phone call service provider Defendants recorded Plaintiff's attorney-client conversations on numerous occasions.

270. Defendants Atwell, Vessar, the prosecutors, Inmate Calling Solutions, LLC, and CenturyLink Public Communications, Inc., recorded and disseminated Plaintiff's attorney-client conversations to third parties not privy to those conversations from 2018-2022.

271. Defendants Atwell, Vessar, the prosecutors, and Securus Technologies Inc., recorded and disseminated Plaintiff's attorney-client conversations to third parties not privy to those conversations from 2016-2018.

272. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the recording of Plaintiff's attorney client conversations.

273. Defendants knowingly provided those communications to third parties including an individual named Helen Wade, who did not represent Plaintiff and who obtained his illegally recorded conversations with his attorneys.

274. Defendants knowingly listened to and/or read the transcriptions of Plaintiff's calls with his attorneys in direct violation of the wiretap statute along with violations of this constitutional rights.

275. Defendants intentionally intercepted, recorded, and disseminated Plaintiff's attorney client conversations.

276. The interception, recording, and dissemination was done without the consent of the parties to the attorney-client relationship and despite Plaintiff listing to the jail the contact information for his attorney's.

277. Those conversations were disclosed to third parties without consent of the privileged parties.

278. Plaintiff is entitled to the rights, protections, and benefits provided under the Missouri Wiretap Act, codified at Mo. Rev. Stat. §§ 542.400 et seq.

279. Defendants are individuals and entities within the meaning of the Missouri Wiretap statute.

280. Plaintiff is an aggrieved person within the meaning of the Missouri Wiretap statute.

281. As set forth herein, Defendants unlawfully recorded confidential communications between Plaintiff and his attorneys.

282. In some cases, Defendants then disclosed those confidential communications to third parties, including but not limited to law enforcement, the prosecutor's office, third party attorneys who did not represent Plaintiff, in further violation of the Missouri Wiretap statute.

283. Pursuant to the Missouri Wiretap Act, Plaintiff is entitled to actual damages but not less than one hundred dollars a day for each day of violation or ten thousand dollars, whichever is greater.

284. Plaintiff is entitled to punitive damages. Defendants conduct has at all times been willful or intentional within the meaning of the Missouri Wiretap statute.

285. Defendant is liable pursuant to Mo. Rev. Stat. § 542.418 for Plaintiff's attorneys' fees and costs/expenses incurred in this action.

286. The actions and omissions of Defendants' caused Fotoohighiam to suffer constitutional deprivations and grievous personal injuries and damages described above.

**COUNT VIII:**
**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth and Fourteenth Amendments**

*Against Boone County by and through its Board of Commissioners, Johnson, Groenweghe, Carey, Vessar, Wilson, Perkins, John Doe 1-30, Jane Doe 1-30.*

287. Plaintiff incorporates by reference all of the foregoing paragraphs.

288. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

289. Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

290. Defendants Boone County, its sheriff's department, andjail are person(s) under 42 U.S.C. § 1983.

291. Defendants, their officials, employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and law of the State of Missouri.

292. At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including the right under the Fourth, Eighth, and Fourteenth Amendments to be secure in his person from racial profiling/discriminating, assault, harassment, abuse, and targeting while a detainee in Defendants' jail.

293. Defendants, including Boone County's policymaking officials, employees, agents, and representatives knew, or should have known, of these rights at the time of the complained conduct as they were clearly established.

294. The acts or omissions of Defendants and their policymaking officials, employees, agents, and representatives as described herein, deprived Plaintiff of his constitutional and statutory rights and caused him damages.

295. Defendants and their policymaking officials, employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiff of his

clearly established rights, privileges, immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

296. Defendants had the authority and duty to train, supervise, discipline, and otherwise control the jail officers and guards.

297. Defendants had the authority and duty to supervise, discipline, and otherwise control the inmates in the jail.

298. Defendants had a duty to provide reasonable training to prevent their employees from wrongfully racially profiling, discriminating, harassing, targeting, assaulting, and abusing Plaintiff in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

299. Defendants failed to train, inadequately trained, or negligently trained their employees in a manner that a reasonable county would have under the circumstances.

300. Defendants and their policymaking officials, employees, agents, and representatives, maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, including those housed in their jails as detainees, where were the moving forces behind and proximately caused the violations of Plaintiff's Constitutional rights as set forth herein.

301. Defendants deliberate indifference to Plaintiff's Constitutional rights includes, but is not limited to:

a. Unofficial customs of recording and disseminating attorney-client conversations despite their privilege.

b. Coercing individuals to falsify and fabricate claims in order to secure convictions.

c. Failing to train Defendants employees to report, protect, and prevent jail employees from racially profiling/discriminating, abusing, harassing, targeting, and depriving Plaintiff;

d. Failing to train Defendants employees that racial profiling/discrimination, assault, abuse, harassment, deprivation, and targeting is not acceptable and prohibited under all circumstances;

e. Failing to supervise the Defendants employees;

f. Failing to adopt and/or enforce proper policies in the identification and prevention of racial profiling/discrimination, abuse, harassment, targeting, assault, and deprivation; and

g. Such further acts of deliberate indifference as discovery will reveal.

302. Defendants and their policymaking officials, employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise their officers and employees in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff.

303. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein – in light of

the particular duties assigned to their employees – that the failure to provide proper training and supervision is deliberately indifferent to those rights.

304. The deliberately indifferent training and supervision provided by Defendants and their officials, employees, agents, and representatives resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to it and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

305. Upon information and belief, Defendant Carey failed in his supervisory role to intervene and prevent the violations of Plaintiff's rights by his officers while Plaintiff was in jail.

306. Defendant Carey had the opportunity to prevent these violations and put a stop to them but consistently allowed for violations to occur, including but not limited to, fabrication of evidence but his deputies and the recording of Plaintiff's attorney-client conversations.

307. Defendant Carey had the ability and power to train and supervise his deputies to ensure that they did not commit constitutional violations and failed to do so. Defendant Carey allowed for violations to occur under his oversight of the Sherrifs Department.

308. As a direct and proximate result of Defendants interference with Plaintiff's federal Constitutional and statutory rights, Plaintiff has suffered the damages and losses outlined in this complaint, which are expected to be ongoing.

309. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988.

## COUNT IX:
## 42 U.S.C. § 1985(3) Conspiracy to Interfere with Civil Rights

*Against Johnson, Groenweghe, Carey, Atwell, Vessar, Wilson, Perkins, John Doe 1-30, Jane Doe 1-30, Hedieh Zaerin Fotoohighiam, Rich, Rastkar, Todd.*

310. Plaintiff incorporates by reference all of the foregoing paragraphs.

311. Defendants conspired together to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3).

312. The conspiracy included those involved with law enforcement, prosecutors, and individual witnesses during Plaintiff's time in jail between 2016-2022 to keep Plaintiff in jail, including but not limited to, Johnson, Groenweghe, Carey, Atwell, Vessar, Wilson, Perkins, Todd, Rich, Rastkar, John and Jane Does 1-30, and Hedieh Zaerin Fotoohighiam.

313. Upon information and belief, acting in concert, Defendant Carey responded to Plaintiff's grievances with placements in solitary confinement or disciplinary segregation, withholding of notices to Plaintiff regarding certain proceedings and sales of his assets in direct violation of due process, and disparately treating Plaintiff, including but not limited to, deliberately refusing to provide Plaintiff with the Covid-19 vaccine despite Plaintiff's request for it and changing the jail handbook when Plaintiff would file grievances.

314. The conspirators engaged in overt acts in furtherance of the conspiracy, including but not limited to fabricating claims against Plaintiff, inducing others to fabricate testimony against Plaintiff.

315. The conspirators engaged in overt acts, including but not limited, to repeated placements in disciplinary segregation after making complaints and grievances in jail, repeated changes of jail manuals after grievances by Plaintiff, recording and dissemination of Plaintiff's attorney-client conversations, constant shakedowns of Plaintiff in jail by Atwell and other officers, planting documents on Plaintiff by Deputy Perkins while Plaintiff was in jail to falsely implicate Plaintiff of crimes he did not commit, and Wilson holding himself out, and being allowed by jail officials to hold himself out to Plaintiff as an attorney, despite not being an attorney, in order to obtain privileged information from Plaintiff.

316. This conspiracy targeted a successful Iranian Muslim businessman, a racial, ethnic, and religious class protected under 42 U.S.C. § 1985(3).

317. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the conspiracy to interfere with Plaintiff's civil rights.

318. Upon information and belief, Defendants directed the conspiracy to take these actions because of their adverse effect upon an ethnic and religious minority living in Boone County Missouri.

319. The conspiracy targeted protected rights of Plaintiff.

320. The conspiracy targeted Plaintiffs constitutionally protected rights including but not limited to due process, freedom from unreasonable searches and seizures, deprivation of civil liberties, and deprivation of his freedom.

321. Plaintiff was injured as a result of these actions as outlined above and was deprived of his constitutional rights as a U.S. citizen.

**COUNT X:**
**Violation of 42 U.S.C. § 1986;**
**Failure to Prevent a Conspiracy to Deprive Rights**

*Against Johnson, Groenweghe, Carey, Atwell, Vessar, Wilson, Perkins, John Doe 1-30, Jane Doe 1-30, Hedieh Zaerin Fotoohighiam, Rich, Rastkar, Todd.*

322. Plaintiff incorporates by Reference all of the foregoing paragraphs.

323. Defendants violated 42 U.S.C. §1986 by failing to meet their duty to prevent or aid in preventing conspiracies to deprive civil rights. Defendants knew that a Section 1985 violation was about to occur or was occurring, had the power to prevent or aid in preventing it, and neglected or refused to prevent or aid in preventing it.

324. Defendants' failure to stop unlawful acts by a Section 1985(3) conspiracy when they know it is about to occur is a quintessential Section 1986 violation. As discussed above in ¶198-205, the Section 1985 conspiracy consisted of but was not limited to fabricating claims against Plaintiff, inducing others to fabricate testimony against Plaintiff, and recording his attorney-client conversations. Defendants knew that such actions were planned and could have taken actions to stop and put an end to these fabrications. Defendants willfully or negligently too no such action.

325. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the failure to prevent Plaintiff's civil rights deprivation.

326. Defendants could and should have refused to comply with unlawful orders, refused to engage in fabrications or inducement of such fabrications.

327. As a result of Defendants' failure to prevent or aid in preventing the Section 1985 conspiracy, Plaintiff was injured, and his civil rights were severely violated.

328. Defendants acted with reckless or callous indifference to the federally protected rights of Plaintiff and therefore are liable for punitive damages.

## COUNT XI:
## Intentional Infliction of Emotional Distress
*Against All Defendants*

329. Plaintiff incorporates by reference all of the foregoing paragraphs.

330. At all relevant times, Defendant had a duty to refrain from intentionally engaging in conduct that would cause emotional distress to Plaintiff.

331. Defendant intentionally and/or recklessly engaged in extreme and outrageous conduct including but not limited to, failing to assist Plaintiff when Plaintiff actively vomited in his cell and was unable to call for help himself, including without limitation the following evidence:

   a. Defendant ignored Anquan Glover, who informed the jail staff that Plaintiff was ill and needed immediate medical attention.

   b. Defendant informed Anquan Glover, after Glover requested aid on behalf of Plaintiff, that Plaintiff himself needed to put in a sick call request.

   c. Defendant denied Plaintiff medical attention because he didn't request it himself.

d. Plaintiff was unable to ask for medical attention himself, which prompted Glover to request help.

e. Defendant acted intentionally and/or recklessly when they required Plaintiff to follow the administrative procedure to request a sick call during Plaintiff's medical emergency.

f. Plaintiff did not receive medical attention.

g. Denying someone medical attention when they need it is extreme and outrageous conduct.

h. Defendant denying Plaintiff medical attention is intentional and/or reckless behavior.

i. Defendant had no legitimate reason to deny Plaintiff medical attention.

j. Defendant denying Plaintiff medical attention caused Plaintiff emotional distress which led to bodily harm.

k. Upon information and belief, John and Jane Doe are individuals who deprived Plaintiff of medical treatment for his injuries and/or falsified his medical records during his time in the Boone County Jail.

332. Defendant intentionally and/or recklessly engaged in extreme and outrageous conduct by not allowing Plaintiff to make phone calls and recording his privileged phone calls, including without limitation the following evidence:

a. Defendant prevented Plaintiff from making phone calls to his attorneys at various times throughout his incarceration.

b. In a 2021 letter to the Judge Ohmer, Defendants admitted that Plaintiff's phone calls with his attorneys were recorded.

c. Copies of the Plaintiff's phone calls were obtained by Defendant Hedieh Fotoohighiam's divorce attorney.

d. Defendants' requested and obtained a translation of a call between Plaintiff and an attorney offering him legal advice, which they obtained from the Plaintiff's recorded calls.

e. Plaintiff repeatedly notified Defendants of his attorney's contact information so that they were on notice that these calls were to be confidential and privileged.

f. Defendants continued to record Plaintiff calls throughout his incarceration.

g. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

333. Defendant Hedieh intentionally fabricated claims against Plaintiff in order to keep him in jail, deprive him of his freedom, deprive him of his children, and to intentionally cause trauma to Plaintiff.

334. Defendant Hedieh along with co-defendants intentionally manufactured claims to keep Plaintiff in jail for the rest of his life.

335. Defendants conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society.

336. Defendants knew or should have known that the conduct described herein would cause severe emotional distress to Plaintiff.

337. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to pain and suffering, mental anguish, indignities, degradation, permanent loss of his life's work, restrictions on daily activity, personal enjoyment, and freedom of speech and expression.

338. Plaintiff's emotional distress was medically diagnosable and medically significant.

339. The emotional distress experienced by Plaintiff was a foreseeable result of Defendant's intentional or reckless conduct.

340. As a further direct and proximate result of Defendants conduct, Plaintiff has incurred medical expenses, continues to suffer emotional and mental anguish, and may incur future expenses for medical treatment.

341. Plaintiff has suffered damages in an amount that exceeds the jurisdictional limits of this Court and will continue to suffer such damages in the future.

**COUNT XII:**
**Negligent Infliction of Emotional Distress**
*Against all Defendants*

342. Plaintiff incorporates by Reference all of the foregoing paragraphs.

343. Defendants negligently confined Plaintiff in solitude and subjected him to disciplinary segregation and psychiatric holds that resulted in emotional distress to Plaintiff.

344. Defendants negligently failed to assist Plaintiff when Plaintiff required medical attention that resulted in emotional distress to Plaintiff, including without limitation the following evidence:

a. Defendants ignored Anquan Glover, who informed the jail staff that Plaintiff was ill and needed immediate medical attention.
b. Defendants informed Anquan Glover, after Glover requested aid on behalf of Plaintiff, that Plaintiff himself needed to put in a sick call request.
c. Defendants denied Plaintiff medical attention because he didn't request it himself.
d. Plaintiff was unable to ask for medical attention himself, which prompted Glover to request help.
e. Defendants acted intentionally and/or recklessly when they required Plaintiff to follow the administrative procedure to request a sick call during Plaintiff's medical emergency.
f. Plaintiff did not receive medical attention.
g. Denying someone medical attention when they need it is extreme and outrageous conduct.
h. Defendants denying Plaintiff medical attention is intentional and/or reckless behavior.
i. Defendants had no legitimate reason to deny Plaintiff medical attention.
j. Defendants denying Plaintiff medical attention caused Plaintiff emotional distress which led to bodily harm.

k. Upon information and belief, John and Jane Doe are individuals who deprived Plaintiff of medical treatment for his injuries and/or falsified his medical records during his time in the Boone County Jail.

l. Upon information and belief, John and Jane Doe are other officers whose names are not yet known, who were involved in the various constitutional violations alleged throughout this complaint.

345. Defendant Hedieh intentionally fabricated claims against Plaintiff in order to keep him in jail, deprive him of his freedom, deprive him of his children, and to intentionally cause trauma to Plaintiff.

346. Defendant Hedieh along with co-defendants intentionally manufactured claims to keep Plaintiff in jail for the rest of his life.

347. At all relevant times, Defendants had a duty to act with reasonable care toward Plaintiff and to avoid causing harm, including emotional distress.

348. Defendants breached this duty by confining Plaintiff in solitude and subjecting him to disciplinary segregation and psychiatric holds, failing to protect Plaintiff and document Plaintiff's injuries, and failing to provide medical attention to Plaintiff, which was unreasonable and failed to meet the standard of care that a reasonably prudent person would have exercised under similar circumstances.

349. As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe emotional distress, including but not limited to, pain and suffering, mental anguish, indignities, degradation, permanent loss of his life's work, restrictions on daily activity, personal enjoyment, and freedom of speech and expression.

350. Plaintiff's emotional distress was medically diagnosable and medically significant, as evidenced by the physical injuries and damages, including physical pain and suffering, personal injuries, physical illness, abuse in prison, and inadequate medical care.

351. The emotional distress experienced by Plaintiff was a foreseeable result of Defendant's negligent conduct.

352. As a further direct and proximate result of Defendant's negligence, Plaintiff has incurred medical expenses and will continue to incur such expenses in the future, in addition to suffering emotional pain and mental anguish.

353. Plaintiff has suffered and will continue to suffer damages in an amount that exceeds the jurisdictional limits of this Court.

**COUNT XIII:**
**Malicious Prosecution under Missouri state law**

*Against Individual Defendants Johnson, Groenweghe, Atwell, Wilson, Vessar, Perkins, Rich, Hedieh Fotoohighiam, Christopher, Rastkar, Todd*

354. Plaintiff incorporates by reference all of the foregoing paragraphs.

355. The Individual Defendants, acting separately and in concert, individually and in their official capacities, did willfully, unlawfully, maliciously and without probable cause or legal justification, cause Fotoohighiam to be prosecuted, detained, and wrongfully imprisoned for nearly three years for arson.

356. Based on a lack of any physical evidence, and credible witness testimony, the Individual Defendants knew, or should have known, that Fotoohighiam was

innocent. Nevertheless, without probable cause, the Individual Defendants caused the commencement of prosecution proceedings against Fotoohighiam. The Individual Defendants' conduct was actuated without any proper motive and with malice because the Individual Defendants knew that Fotoohighiam was not the actual perpetrator of the crime, yet they fabricated evidence against him.

357. Upon information and belief, during Plaintiff's incarceration, certain officials withheld Plaintiff's mail, prevented Plaintiff from receiving and sending out legal mail, and prevented Plaintiff from timely pursuing legal appeals and access to the Courts.

358. Defendants fabricated testimony from individuals including Todd and Greenup to secure charges and a conviction against Plaintiff. Defendants knew that these statements were false and untrue at the time they were made and throughout the criminal proceedings.

359. Defendants likewise coerced Greenup to leave Missouri before Plaintiff's trial in order to prevent him from revealing the fabrications and cross examination.

360. Despite this, Defendants failed to terminate the criminal case against Plaintiff and proceeded to trial.

361. On April 7, 2022, Fotoohighiam's was acquitted of the charges in a trial by jury, after spending nearly three years in prison arrested for a crime he did not commit.

362. As a direct and proximate result of the Individual Defendants' malicious prosecution of Fotoohighiam's, Fotoohighiam's was wrongfully detained and

imprisoned for nearly three years for crimes he did not commit, and suffered the physical, emotional, and pecuniary damages as described above.

**COUNT XIV:**
**Respondeat Superior under Missouri State Law**

*Against the Boone County* by and through its Board of Commissioners.

363. Plaintiff incorporates by reference all of the foregoing paragraphs.

364. Defendants were, at all relevant times, employed by Boone County by and through its Board of County Commissioners, Boone County Sheriff's Department, Columbia Police Department, Boone County Prosecutors Office, St. Charles Prosecutors Office, Boone County Jail.

365. Defendants, were, at all relevant times, acting within the scope of their employment with Boone County, the Boone County Sheriff's Department, in that their actions were in furtherance of the investigation of the alleged conspiracy to commit murder, which was the assigned responsibility of the Defendants.

366. Accordingly, Boone County by and through its Board of County Commissioners, Boone County Sheriff's Department, Boone County Prosecutors Office, St. Charles Prosecutors Office, Boone County Jail, are liable as principle for all torts committed by its agents and employees.

**COUNT XV:**
***Monell* Claim**

***Against Boone County by and through its Board of County Commissioners***

367. Plaintiff incorporates by reference all of the foregoing paragraphs.

368. Boone County by and through its Board of County Commissioners was at all relevant times responsible for the administrative policies, practices, and functions of the Prosecutor's Office, Police Department, Sheriff's Department, and Boone County Jail.

369. The Individual Defendant Officers and Detectives, and jail staff, employed by and through the City of Columbia and Boone County, violated Fotoohighiam's clearly established constitutional rights.

370. The violations against Fotoohighiam resulted from the City of Columbia's and Boone County's official policies, unofficial customs, and because the city was deliberately indifferent in failing to train or supervise the officers and detectives investigating and prosecuting this case.

371. Boone County maintained unofficial customs of recording attorney client conversations in their jails.

372. Boone County continuously and systematically recorded attorney client conversations in their jails without regard to constitutional violations.

373. Boone County failed to supervise its officers and employees in their continuous recording of attorney client conversations and continued these violations.

374. Boone County failed to train its officers in the constitutional protections afforded to attorney client conversations and that those calls should not be recorded or disseminated to party's outside of the attorney client relationship.

375. Boone County maintained unofficial customs of allowing their Sheriffs to manufacture claims against individuals in efforts to prosecute them.

376. Boone County failed to supervise its sheriff's and officers in their investigative practices including officers falsely appearing as attorneys when speaking with inmates in order to and in an effort to solicit information.

377. Boone County's unofficial custom of using inmate witnesses to push forward charges against individuals, without corroboration or ascertaining the veracity of the allegations, caused Plaintiff and similarly situated individuals to be wrongfully prosecuted and jailed.

378. Boone County's failure to supervise and train its officers in conducting proper investigations that are unbiased, based on credible evidence, and not manufactured for the purposes of obtaining a conviction.

379. The violations against Fotoohighiam were intentional, calculated and a result of Boone County by and through its Board of County Commissioners, Boone County Sheriff's Department, Boone County Prosecutors', and Boone County Jail's deliberate culture of failing to oversee and/or confirm the veracity of their detective's investigations.

**WHEREFORE**, Plaintiff MERHDAD FOTOOHIGHIAM prays as follows:

A. That the Court award compensatory damages to Plaintiff and against all Defendants, jointly and severally, in an amount to be determined at trial;

B. That the Court award punitive damages to Plaintiff, and against all individual Defendants in their individual capacity, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

C. For a trial by jury;

D. For pre-judgment and post-judgment interest and recovery of Plaintiff's costs, including all reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983, 1985, and 1986 claims; and,

E. For all other relief and damages to which Plaintiff may be entitled.

Date: May 23, 2025

Respectfully submitted,

/s/Ahmad Zaher
Ahmad Zaher
Advanta Law Firm, PLC
23800 Northwestern Hwy., Ste 220
Southfield, MI 48075
Tel: 1.248.281.6299
Fax: 1.248.864.8554
azaher@advantalaw.com

SEAN W. PICKETT & ASSOC. LLC
Sean W. Pickett #46065
1501 Iron Street.
Kansas City, MO 64116
(816) 472-1600
(816) 472-0200
swp@kclawoffice.com

Shiraz K. Khan
The Shiraz Law Firm, PLLC.
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com

**ATTORNEYS FOR**
**MERHDAD FOTOOHIGHIAM**

## CERTIFICATE OF SERVICE

I, AHMAD ZAHER, certify that the foregoing document(s) was filed and served via the Court's electronic filing system this 23rd day of May 2025, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Dated: May 23, 2025

Respectfully submitted,

Ahmad Zaher
Advanta Law Firm, PLC
23800 Northwestern Hwy., Ste 220
Southfield, MI 48075
Tel: 1.248.281.6299
Fax: 1.248.864.8554
azaher@advantalaw.com